UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-165(8) (JRT/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>WILLIE (NMN) BELLAMY, JR.,<br><br>          Defendant. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)** |

## INTRODUCTION

Defendant Willie Bellamy, Jr. has filed a pro se motion for compassionate release and a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) based on the December 2018 enactment of the First Step Act. (Doc. No. 2776.) He claims that the Bureau of Prisons ("BOP") failed to respond to his administrative remedy appeal of the denial for compassionate release after submitting sufficient medical records verifying his serious and acute medical condition to BOP. Since the filing of his motion, the institution and Central Office have reexamined and denied Bellamy's request for compassionate release because he does not meet the criteria for a debilitated medical condition or a non-medical circumstances-elderly offender criteria reduction in sentence. In addition, he does not have an adequate relocation and release plan and has an

1

outstanding warrant.[1] As a result, Bellamy's § 3582(c) motion for a reduction in sentence and release should be denied.

## BACKGROUND

### I. Summary of Facts and Bellamy's Characteristics that Preclude him from Early Release

During the spring and summer of 2014, law enforcement began investigating the drug trafficking activities of Omar Sharif Beasley and his drug trafficking organization. According to information provided by community members as well as facts learned during the investigation, law enforcement was aware that Beasley was distributing large quantities of heroin in and around the Red Lake and White Earth Indian Reservations. Further, Beasley was using local community members to assist him in the distribution of controlled substances.

As the investigation continued, law enforcement secured authorization to intercept telephone calls made by Beasley. While intercepting Beasley's telephone calls in March and April 2015, law enforcement identified the defendant, Willie (NMN) Bellamy, as Omar Sharif Beasley's father and facilitator of heroin. Based on intercepted telephone calls, law enforcement determined that the defendant facilitated the introduction of Beasley to

---

[1] The government understands that the defendant may be seeking to clear the warrant and find a suitable release plan as recently as June 24, 2019.

various sources of supply for heroin in Detroit, Michigan. In essence, the defendant would aid his son with locating sources of supply with "good" heroin and facilitate the exchange of heroin from the sources of supply to Beasley.

Based on the defendant's admissions to the Court at the time of his change of plea hearing, the defendant facilitated the purchase and subsequent distribution of at least 1 kilogram but less than 3 kilograms of heroin in the District of Minnesota, namely in the communities on and surrounding the Red Lake and White Earth Indian Reservations.

At the time of the defendant's acts in the conspiracy, the defendant was 67 years old. The defendant had a series of medical conditions requiring a doctor's supervision. (Presentence Report "PSR" ¶ 165.) Further, the defendant was on supervised release for Conspiracy to Distribute Controlled Substances. (PSR ¶ 148.) The defendant had served 24 months' of imprisonment for the drug conviction in the Eastern District of Kentucky. (*Id.*) Finally, the defendant had an extensive record dating back to 1969. (PSR pp. 26-31.)

## II. Bellamy's Conviction and Sentence

On January 5, 2017, Bellamy pled guilty to a one-count Information of conspiracy to distribute and possession with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 846. (Doc. No. 2005.) The

Court sentenced Bellamy to 60 months imprisonment and four years of supervised release on June 30, 2017. (Doc. No. 2393.) The Court varied downward at sentencing finding the Defendant's age and poor health were mitigating factors. (Doc. No. 2394, Statement of Reasons at p. 4 of 4.) Bellamy did not appeal his sentence or conviction. According to the BOP's website, Bellamy has a release date of November 15, 2021.

### III. The First Step Act and Section 3582(c)(1)(A)

The First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018),[2] was enacted on December 21, 2018, and aims to reduce recidivism of federal inmates. It directs the BOP to take specific actions regarding programming, good-time credit, and compassionate release, among other issues. As relevant here, Section 603(b) of the First Step Act amends 18 U.S.C. § 3582 to permit inmates in specified circumstances to file motions in court seeking "compassionate release." Previously, only the Director of BOP could file such a motion. Under the First Step Act, an inmate may file a motion after exhausting administrative review of the denial of a request to BOP for compassionate release, or after 30 days have passed since the request was made to the warden, whichever is earlier.

---

[2] The text of the FSA may be found at:
https://www.congress.gov/bill/115th-congress/senate-bill/756/text#toc-id368aca90db704a939b75a29fa150c3f7

As before enactment of the First Step Act, Section 3582(c)(1)(A)(i) permits release based on "extraordinary and compelling reasons," consistent with any applicable policy statement of the Sentencing Commission. That policy statement, which appears at U.S.S.G. § 1B1.13, is therefore binding on the court. As further detailed below, the policy statement in turn incorporates a BOP program statement further defining sufficient circumstances for immediate release. The guideline policy statement and the BOP program statement focus on circumstances such as illness, declining health, age, and exceptional family circumstances. Pursuant to the statute, rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason. In any case, under the policy statement, the court must consider the Section 3553(a) factors and specifically determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

### IV.  U.S.S.G. § 1B1.13, Application Note 1

As under prior law, in assessing the merits of an inmate's motion for compassionate release under Section 3582(c)(1)(A), the Court's ultimate decision must be "consistent with applicable policy statements issued by the Sentencing Commission." Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall

describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Accordingly, the policy statement of the Commission is binding on the court. *See Dillon v. United States,* 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).

The Commission's pertinent policy statement appears at U.S.S.G. § 1B1.13. As amended November 1, 2018, the statement repeats the text of Section 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The policy statement also encourages the Director of the BOP to file a motion for compassionate release if the defendant meets any of the circumstances set forth in Application Note 1. U.S.S.G. § 1B1.13 app. note 4. The same note further states: "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical

6

condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." *Ibid.*

Application Note 1 sets forth the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served

>  at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Application note 2 adds that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." U.S.S.G. § 1B1.13 app. note 2.

Application Note 3 states: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 app. note 3.

## V. BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205

As noted above, the policy statement is not the only source of criteria the court may apply in determining whether "extraordinary and compelling reasons" exist to justify a reduction. Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 app. note 1(D). Accordingly, a court may grant compassionate release not only on grounds specified by the Sentencing Commission, but also those set forth in the relevant BOP regulation governing compassionate release.

That regulation appears at Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1.

Program Statement 5050.50 contains standards that are both more extensive than and slightly different from those stated in the Section 1B1.13 policy statement. For instance, the program statement defines a "debilitated medical condition" as one where the inmate is "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or

9

chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Program Statement 5050.50 at 5. The program statement's provisions regarding the class of elderly inmates eligible for compassionate release is also slightly different from the related provision in Section 1B1.13. To the extent that the program statement and the policy statement conflict, it is the policy statement—*i.e.*, the source directly authorized by statute—is binding. An interpretation in the program statement that does not contradict the policy statement, however, is entitled to some weight. *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted).

## ARGUMENT

Here, the Bureau of Prisons ("BOP") followed the revised Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205, in reconsidering Bellamy's requests for compassionate release under the "debilitated medical" and "non-medical circumstances-elderly offender criteria." Ultimately, the BOP determined that the defendant did not meet the criteria for a reduction in sentence under either prong of Program Statement 5050.50. The defendant

is not entitled to a reduction in sentence because nothing has changed since the defendant was sentenced in June 2017.

## I. The Defendant Does Not Qualify for a Reduction in Sentence Due to a Debilitated Medical Condition

### A. BOP Policy

The Bureau's objective criteria for a compassionate release based on the debilitated medical condition of an inmate are as follows:

> Reduction in Sentence ("RIS") consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:
>
> ■ Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
> ■ Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.
>
> The BOP's review should also include any cognitive deficits of the inmate (e.g., Alzheimer's disease or traumatic brain injury that has affected the inmate's mental capacity or function). A cognitive deficit is not required in cases of severe physical impairment, but may be a factor when considering the inmate's ability or inability to reoffend.

See Program Statement 5050.50 at 8.

### B. Sentencing Commission Guidance

The U.S. Sentencing Guidelines include application notes intended to guide the sentencing court's analysis of a compassionate release motion. Application Note 1(A)(ii) of U.S.S.G. § 1B1.13 does not provide as specific criteria for a debilitated medical compassionate release as Bureau of Prisons'

11

policy does. The sentencing court is directed to consider whether the defendant is merely suffering from a serious physical or medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." See U.S.S.G § 1B1.13, Appl. Note 1(A)(ii)(I).

### C. Bellamy's Medical Conditions

Defendant Bellamy suffers from a number of medical issues, including a history of New York Heart Association class III heart failure, diabetes, hyperlipidemia, obesity, polyneuropathy, hypertension, asthma, esophageal reflux, sleep apnea, osteoarthritis bilateral knees, and urinary incontinence.[3] He has been hospitalized several times in the past due to chest pain and dyspnea but has remained stabilized since July 2018. He uses a wheelchair with the assistance of an inmate companion and requires some assistance with his activities of daily living (ADLs) and instrumental ADLs. Bellamy is able to function sufficiently in a general population institution, but, according to BOP, he is pending a transfer to a medical referral center in order to receive additional assistance.

Based on the defendant's medical situation in March 2019, BOP denied the defendant's request for a reduction in sentence. The defendant's medical

---

[3] Defendant Bellamy's medical records are available if the Court seeks review.

condition has not changed since he was sentenced in June 2017. (*See* PSR ¶ 165.) The defendant should not receive a reduction in sentence for medical conditions that were adequately considered at the time of sentencing.

## II. Compassionate Release for Elderly Inmates with Medical Conditions

### A. BOP Policy

The Bureau's objective criteria for compassionate release based on an inmate's age and medical conditions are as follows:

> ■ Age 65 and older.
> ■ Suffer from chronic or serious medical conditions related to the aging process.
> ■ Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.
> ■ Conventional treatment promises no substantial improvement to their mental or physical condition.
> ■ Have served at least 50% of their sentence.
>
> Additionally, for inmates in this category, the BOP should consider the following factors when evaluating the risk that an elderly inmate may reoffend:
>
> ■ The age at which the inmate committed the current offense.
> ■ Whether the inmate suffered from these medical conditions at the time the inmate committed the offense.
> ■ Whether the inmate suffered from these medical conditions at the time of sentencing and whether the Presentence Investigation Report (PSR) mentions these conditions.
>
> The BOP Medical Director will develop and issue medical criteria to help evaluate the inmate's suitability for consideration under this RIS category.

Program Statement 5050.50 at 6.

### B.  Sentencing Commission Guidance

Application Note 1(A)(ii) directs the sentencing court to consider whether the defendant is merely "experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." See U.S.S.G § 1B1.13, Appl. Note 1(A)(ii)(III).

### C.  Bellamy's Consideration

Bellamy was considered under the compassionate release criteria for elderly inmates with medical conditions, but was denied because he had not served 50% of his sentence, and he was 69 years old at the time of his offense. As of June 2019, Bellamy has served substantially less than 50% of his sentence, and therefore, does not qualify under the Bureau's objective criteria. The defendant does not qualify under the elderly provisions for reduction in sentence because the defendant does not meet the criteria.

## III.  General Considerations

### A.  BOP Policy

Although an inmate may meet objective criteria for a compassionate release, the Bureau recognizes he may not be appropriate for a compassionate release due to other factors:

- Nature and circumstances of the inmate's offense.

14

- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. This factor is considered with respect to proximity to release date or Residential Reentry Center (RRC) or home confinement date.
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

When reviewing RIS requests, these factors are neither exclusive nor weighted. These factors should be considered to assess whether the RIS request presents particularly extraordinary and compelling circumstances.

Overall, for each RIS request, the BOP should consider whether the inmate's release would pose a danger to the safety of any other person or the community.

Program Statement 5050.50 at 12-13.

### B.   Sentencing Commission Guidance

In considering whether to grant a compassionate release, U.S.S.G. § 1B1.13(2) directs the sentencing court to consider whether the defendant is a "danger to the safety of another person or to the community, as provided in 18 U.S.C. § 3142(g)." Section 3142(g) of Title 18 provides,

> (g) Factors To Be Considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

15

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

### C. Bellamy's Consideration

Here, the defendant was approximately 67 years old when he committed the conduct in this case. The defendant plainly assisted his son in acquiring heroin for distribution in the District of Minnesota. The defendant has

committed two significant drug offenses in the past 10 years.  Further, the defendant lacks a release plan.  All of the factors set forth in policy weigh against the Court granting a compassionate release under both the BOP and Court's subjective criteria.  He does not provide a specific release plan in his motion, but in the attachments, he claims his wife, daughter, sister-in-law, and brother-in-law would provide care as needed.  (*See* Doc. No. 2776-2, at 2.)  He identifies these individuals as living in Michigan.  (*Id.*)  Based on this release plan, BOP staff asked U.S. Probation to relocate his supervision to the Eastern District of Michigan.  On February 5, 2019, U.S. Probation denied Bellamy's request to transfer his supervision due to a pending warrant/violation of supervised release.

According to the docket in *United States v. Willie Bellamy,* No. 10-CR-20437 (E.D. Mich.), jurisdiction over Bellamy's supervised release in another criminal case had been transferred from the Eastern District of Kentucky to the Eastern District of Michigan. On June 6, 2016, a warrant for a violation of supervised release was issued, and on June 13, 2016, Bellamy was released on a $10,000 unsecured bond.  The court has not adjudicated the supervised release violation as of March 19, 2019, but Bellamy filed a motion with that court on March 7, 2019, to "expunge" the violation.  This pending supervised release violation also weighs against the Court granting a compassionate release under both the BOP and Court criteria.

## CONCLUSION

Nothing has changed in the defendant's medical condition since the defendant was sentenced in June 2017. The defendant has failed to show that he meets the criteria for a reduction in sentence based on his medical condition or his age. Accordingly, the Court should deny Bellamy's motion for compassionate release.

Dated: June 28, 2019                                Respectfully submitted,

                                                           ERICA H. MacDONALD
                                                           United States Attorney

                                                           *s/Deidre Y. Aanstad*

                                                           BY:  DEIDRE Y. AANSTAD
                                                           Assistant U.S. Attorney
                                                           Attorney ID No. 0331788
                                                           Email: Deidre.Aanstad@usdoj.gov